FILED

2006 Sep-12  AM 11:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| JEFFERY ALAN THOMPSON, | ) | |
| PLAINTIFF, | ) | |
| VS. | ) | 2:05-cv-0701-JHH |
| LOUISVILLE LADDER GROUP, LLC, ET AL., | ) | |
| DEFENDANT. | ) | |

## MEMORANDUM OF DECISION

The court has before it the June 15, 2006 motions (docs. # 20, 22) of

defendant Louisville Ladder, Inc., f/k/a Louisville Ladder Group, LLC for the

exclusion of the testimony of the plaintiff's expert Dr. Ollie Vance and for

summary judgment.   Pursuant to the court's June 20, 2006 order (doc. #23), the

motions were deemed submitted, without oral argument, as of July 26, 2006.

## I. Procedural History

Plaintiff Jeffery Alan Thompson commenced this action on March 10, 2005

by filing a complaint in the Circuit Court of Jefferson County, Alabama.  The suit

was properly removed to this court on April 4, 2005.  Plaintiff's complaint alleges

multiple state law claims arising from his fall from a 20-foot extension ladder at

work on or about March 22 or 23, 2003.  (<u>See</u> Compl. ¶¶ 1, 12.)  Specifically, the complaint asserts claims for: (1) liability under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"); (2) failure and refusal to warn; (3) breach of warranties; and (4) failure to retrofit, recall, or withdraw.  On June 15, 2006, defendant filed a memorandum of law (doc. #21) and evidentiary submission (contained in the motion for summary judgment) (doc. #20), asserting that there are no genuine issues of material fact regarding any of plaintiff's claims and that defendant is entitled to judgment as a matter of law on all claims. Plaintiff filed a response (doc. #27) to defendant's motion for summary judgment which included an evidentiary submission and a brief (doc. #28) in opposition to the motion on July 19, 2006.

Contemporaneous with the filing of the motion for summary judgment, defendant filed a motion (doc. #22) to exclude the testimony of plaintiff's expert Dr. Ollie Vance with supporting evidence.  On July 19, 2006, Plaintiff filed a response (doc. #29) in opposition to that motion.

Both the motion for summary judgment and the motion to exclude the testimony of plaintiff's expert are discussed herein.

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  See id. at 323.  Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  See id. at 324.

The substantive law will identify which facts are material and which are irrelevant.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.

If the evidence is merely colorable, or is not significantly probative, summary

judgment may be granted.  See id. at 249.

The method used by the party moving for summary judgment to discharge

its initial burden depends on whether that party bears the burden of proof on the

issue at trial.  See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four

Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)).  If the moving

party bears the burden of proof at trial, then it can only meet its initial burden on

summary judgment by coming forward with positive evidence demonstrating the

absence of a genuine issue of material fact; i.e. facts that would entitle it to a

directed verdict if not controverted at trial.  See Fitzpatrick, 2 F.3d at 1115.  Once

the moving party makes such a showing, the burden shifts to the non-moving party

to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy

its initial burden on summary judgment in either of two ways.  First, the moving

party may produce affirmative evidence negating a material fact, thus

demonstrating that the non-moving party will be unable to prove its case at trial.

Once the moving party satisfies its burden using this method, the non-moving

party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case.  <u>See</u> <u>Fitzpatrick</u>, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  <u>See</u> <u>Lewis v. Casey</u>, 518 U.S. 343, 358 (1996) (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992)).

### III. Relevant Undisputed Facts[1]

The facts in this case are straightforward and essentially agreed upon.
Plaintiff Jeffery Alan Thompson fell from a 20 foot aluminum extension ladder
designed and manufactured by defendant Louisville Ladder.  (See Compl. ¶ 1.)
The ladder "suddenly twisted and gave way," causing plaintiff to fall.  (See id. at ¶
13.)

On the day of the accident, plaintiff was working for Mr. Paul Jackson of
Renee's Renovations, installing a copper roof on the front porch of a house at the
Hoover Preserve.  (See Compl. at ¶ 12; see also Doc. #28 at 1;[2] Thompson Dep. at
67-68.)  Plaintiff was working on the ladder which he had positioned against the
fascia board on the front part of the house.  (See Thompson Dep. at 68. 81-82.)
This position allowed him to stand on the ladder with his chest at roof level to
perform the task of bending the copper around the roof and riveting it into place.
(See id. at 60, 69, 114.)

Plaintiff recalls that as he  was bending the metal, he felt the ladder roll and
begin to fall.  (See id. at 116-17.)  He does not recall any sensation of rolling left

---

[1] If facts are in dispute, they are stated in the manner most favorable to the plaintiff.  See
Fitzpatrick, 2 F.3d at 1115.

[2] The plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary
Judgment does not have numbered pages.  For purposes of this Memorandum of Decision, the
court has numbered those pages sequentially.

or right.  (See id. at 117.)  He tried to grab hold of something to keep himself from

falling to the ground, but was unsuccessful with this endeavor.  (See id. at 117.)

As a result, he landed on the ground on his left foot, fracturing his left tibia. (See

id.; see also Compl. at ¶ 14; Doc. #28 at 2.)  Immediately after the fall, plaintiff

saw that a plastic end cap from the ladder was lying on the ground.  (See Doc. #28

at 2; see also Thompson Dep. at 119, 132.)

## IV. Defendant's Motion to Exclude the Testimony of Ollie Vance

Defendant moves the court to exclude the testimony of plaintiff's expert Dr.

Ollie Vance, contending that the testimony is inadmissible because it is not based

on sufficient facts or data and because it is not the product of reliable principles

and methods.  (See Doc. #22 at 2-7.)  Defendant's motion is due to be granted for

the following reasons.

### A.     Rules Governing the Admissibility of Expert Testimony

The Federal Rules of Evidence govern the admissibility of expert

testimony.  Rule 702 provides that:

> If scientific, technical, or other specialized knowledge will assist the
> trier of fact to understand the evidence or to determine a fact in issue,
> a witness qualified as an expert by knowledge, skill, experience,
> training or education, may testify thereto in the form of an opinion or
> otherwise, if (1) the testimony is based upon sufficient facts or data,
> (2) the testimony is the product of reliable principles and methods,

and (3) the witness has applied the principles and methods reliably to
the facts of the case.

Incorporated into this Rule are the concepts articulated in the two seminal

Supreme Court cases on expert testimony – <u>Daubert v. Merrell Dow</u>

<u>Pharmaceuticals</u> and <u>Kumho Tire Company, Ltd. v. Carmichael</u>.  <u>Daubert</u> imposed

upon the trial judge the obligation to "ensure that any and all scientific testimony

… is not only relevant, but reliable" and provided a non-exhaustive list of factors

that may guide the trial judge's Rule 702 decision as to whether expert testimony

might reliably assist the fact-finder.  509 U.S. 579, 589 (1993).  <u>Kumho Tire</u>

extended <u>Daubert</u>'s application from "scientific testimony" to "all expert

testimony."  526 U.S. 137, 147 (1999).

 Thus, whether scientific or technical expert testimony, the court is to

perform the critical "gatekeeping" function concerning the admissibility of the

evidence.  <u>See</u> <u>United States of America v. Frazier</u>, 387 F.3d 1244, 1260 (11th Cir.

2004), <u>citing</u> <u>Daubert</u>, 509 U.S. at 589 n.7.  "The importance of <u>Daubert</u>'s

gatekeeping requirement cannot be overstated . . . the objective of that requirement

is to ensure the reliability and relevancy of expert testimony.  It is to make certain

that an expert, whether basing testimony upon professional studies or personal

experience, employs in the courtroom the same level of intellectual rigor that

characterizes the practice of an expert in the relevant field." Id., citing Kumho

Tire, 526 U.S. at 152.

A three part inquiry aids the court in implementing its gatekeeping function.

Specifically, the court is to consider whether:

> (1) [T]he expert is qualified to testify competently regarding the
> matters he intends to address; (2) the methodology by which the
> expert reaches his conclusions is sufficiently reliable as determined
> by the sort of inquiry mandated in Daubert; and (3) the testimony
> assists the trier of fact, through the application of scientific, technical,
> or specialized expertise, to understand the evidence or to determine a
> fact in issue.

Quiet Technology DC-8, Inc. v. Hurel-Dubois UK, Ltd., 326 F.3d 1333, 1340-41

(11th Cir. 2003)(internal citations omitted); see also City of Tuscaloosa v. Harcros

Chems., Inc., 158 F.3d 548, 562 (11th Cir. 1998). "While there is inevitably some

overlap among the basic requirements – qualification, reliability, and helpfulness –

they remain distinct concepts and the courts must take care not to conflate them."

Frazier, 387 F.3d at 1260. At all times the burden remains with the proponent of

the testimony to establish that the admissibility requirements have been met by a

preponderance of the evidence. See Rudd v. Gen. Motors Corp., 127 F. Supp.2d

1330, 1334 (M.D. Ala. 2001), citing Bourjaily v. U.S., 483 U.S. 171, 172-73

(1987) and Allison v. McGhan Med. Corp, 184 F.3d 1300, 1312 (11th Cir. 1999)

("The proponent of the testimony does not have the burden of proving that it is

scientifically correct, but that by a preponderance of the evidence, it is reliable").

To this end, a trial court is under no obligation to hold a <u>Daubert</u> hearing before

excluding expert testimony.  "It was [plaintiff's] burden – not that of the trial court

– to lay a foundation for admission of [the expert's] testimony."  <u>Cook ex rel.</u>

<u>Estate of Tessier v. Sheriff of Monroe County, Fla.</u>, 402 F.3d 1092, 1114 (11th Cir.

2005).

 It is under this framework that the court considers the admissibility of the

testimony of plaintiff's expert Dr. Ollie Vance.

### B. The Testimony of Dr. Ollie Vance

 The central fact at issue in this case is whether a defect in the ladder

manufactured and placed into the stream of commerce by defendant Louisville

Ladder proximately caused plaintiff's accident.  Admissible expert opinion on this

issue or any "piece of the puzzle" would undoubtedly aid the trier of fact in

deciding the ultimate issue of defendant's liability.  <u>Harcros</u>, 158 F.3d at 565.

 It is the opinion of Dr. Ollie Vance that the plastic end cap on the tip of the

left rail of the extension ladder formed a stress crack during prior use and broke

off due to an improper design.  (<u>See</u> Vance Dep. at 85-86.)  Specifically, Vance

opines:

10

"A weakness in the design is attributable to the fact that there is a relatively sharp corner where the vertical attachment portion of the cap meets the horizontal ladder leg cover.  This area of stress concentration is hidden from the view of any user.  As a consequence the crack initiation at that concentration would not be visible to the user.  *It is apparent that a crack did form in the cap resulting in its ultimate complete failure.  This failure resulted in the fall of the ladder and Mr. Thompson's subsequent injury.*

At the time of the failure of the cap the ladder leg from which it separated swung under the fascia board against which it had been propped, resulting in rotation of the ladder and the subsequent fall of Mr. Thompson."[3]

(Doc. #29 at 4, <u>citing</u> Pl.'s R. 26 Disclosures Regarding Ollie Vance at 1) (emphasis added).[4]  When considered along with his deposition testimony, it is apparent that there are at least four discrete parts that can be parsed from Vance's opinion.  Those are: (1) the design of the Louisville Ladder end cap is defective; (2) the defect in design allows an area of stress concentration to develop, thus initiating cracks during normal ladder usage; (3) a crack did form in the end cap used by the plaintiff on the day of the accident; and (4) the failure of the end cap resulted in the fall of the ladder and Mr. Thompson's subsequent

---

[3] Neither of the parties submitted into evidence a copy of any expert report created by Dr. Vance or a complete copy of Dr. Vance's deposition.

[4] The Plaintiff's Response to Defendant's Motion to Exclude the Testimony of Plaintiff's Expert Ollie Vance does not have numbered pages.  For purposes of this Memorandum of Decision, the court has numbered those pages sequentially.

injury.  (See Doc. #29 at 4, citing Pl.'s R. 26 Disclosures Regarding Ollie Vance at 1; see also generally Vance Dep.)

Dr. Vance formed this opinion after reviewing the plaintiff's deposition, speaking with the plaintiff's attorney (but not the plaintiff himself), examining the ladder that the plaintiff was using on the day of the accident (but not the end cap that broke off the ladder), and examining exemplar ladders.  (See Vance Dep. at 58-60.)  He did no independent analysis to reconstruct the accident.  (See id. at 59.)

### C.    Reliability and Relevance of Dr. Vance's Opinion

#### 1.    Factual Basis

The first three of Vance's conclusions are entirely dependent on the fourth. That is, Vance testifies that "if you assume that the end cap came off and caused the fall, then there must have been some crack in there to weaken the cap." (Vance Dep. at 88-90, 119, 132.)  This is the critical fault of the testimony. Vance admits that his testimony is based on an assumption and not a fact.  Such an assumption must be established by more than the expert's ipse dixit assertion of its validity.  See Fed. R. Evid. 702 advisory committee's notes (2000 amends) and Frazier, 387 F.3d at 1261 ("If admissibility could be established merely by the ipse dixit of an admittedly qualified expert, the reliability prong would be, for all

practical purposes, subsumed by the qualification prong").  More specifically, expert opinions on causation are admissible where the expert "provides a step-by-step and transparent account of the explanations he has considered, the physical indicia he associates with each possible alternative cause, and his reasons for excluding each of the alternative causes."  Rudd, 127 F. Supp.2d at 1344.  An expert should explain "how [his professional experience] leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts . . . [The expert's] testimony is ultimately reliable [where] he has made his reasoning processes and data sources sufficiently transparent so that, if there are counter-arguments and counter-evidence available to suggest [he] failed to consider a possible cause or is wrong to rely so conclusively on the physical indicia he has specified, the adversary system will be competent to make this evident through 'vigorous cross examination' and 'presentation of contrary evidence.'"  Id. (internal citations omitted).

Here, Vance's testimony does nothing to explain to the court why it is, in his opinion, accurate to assume that the end cap came off and caused the fall.  It certainly is possible that a broken end cap caused the accident.  But many other scenarios are also possible.  One such scenario has been articulated by the defendant – perhaps the end cap separated from the ladder due to the force of the

impact of the ladder <u>immediately</u> <u>after</u> Mr. Thompson's fall. (<u>See</u> Doc. #22 at 5.)
Vance himself agrees that this is a viable scenario, yet performs no analysis to
explain to the court why his theory of causation is more likely than that of
defendant.[5]  (<u>See</u> Vance Dep. at 87.)  Without such explanation, Vance's theory of
causation is pure speculation.

"The courtroom is not the place for scientific guesswork, even of the
inspired sort.  Law lags science; it does not lead it." <u>McClain v. Metabolife Int'l,
Inc.</u>, 401 F.3d 1233, 1246 (11th Cir. 2005), <u>citing</u> <u>Rosen v. Ciba-Geigy Corp.</u>, 78
F.3d 316, 319 (7th Cir. 1996); <u>see</u> <u>also</u> <u>Slay v. Keller Indust., Inc.</u>, 823 So.2d 623,
625 (Ala. 2001) (upholding district court's exclusion of expert testimony where
the expert did not reconstruct the accident nor perform any tests on the ladder or
exemplar ladders because "mere assertions of belief, without any supporting
research, testing, or experiments, cannot qualify as proper scientific testimony")
and <u>General Motors Corp. v. Jernigan</u>, 883 So.2d 646 (Ala. 2003); <u>Michigan
Millers Mut. Ins. Corp. v. Benfield</u>, 140 F.3d 915, 921 (11th Cir. 1998) (holding it

---

[5] Another way to remedy this deficiency may have been reconstructing the accident.
Reconstruction of the accident might have shown that the end cap must have separated from the
ladder prior to the fall.  Or reconstruction of the accident might have shown that no such fall
could have occurred but for a pre-existing crack in the end cap.  Unfortunately, we have no such
knowledge because no expert attempted to reconstruct the accident and plaintiff does not know
when the end cap separated from the ladder.

permissible to strike the testimony of an expert who could not explain how he came to his conclusions).  Therefore, defendant's Motion to Exclude the Testimony of Plaintiff's Expert Ollie Vance is due to be granted.

       2.    Methodology

    Federal Rule of Evidence 702 also requires that expert testimony be the product of reliable principles and methods.  <u>See</u> Fed. R. Evid. 702.  In assessing the reliability of an expert's methodology, <u>Daubert</u> sets forth the following considerations: (1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the technique has been subject to peer review and publication; (3) the known and potential error rate of the methodology; and (4) whether the technique has been accepted in the proper scientific community. <u>McDowell v. Brown</u>, 392 F.3d 1283, 1298 (11th Cir. 2004).  These considerations are based on the reasoning that an expert opinion cannot be scientific, technical, or specialized knowledge unless it is grounded in methods and procedures and more than a subjective belief or unsupported speculation.  <u>See</u> <u>Daubert</u>, 509 U.S. at 593 (emphasizing the district court's role as a gatekeeper and stating that valid scientific methodology usually involves "general hypotheses and testing them to see if they can be falsified").

The problem with Vance's testimony is that he sets forth *no* method upon which to test the considerations of reliability.  He opines that the plastic end cap on the tip of the left rail of the extension ladder formed a stress crack during prior use.  (See Vance Dep. at 90.)  He believes that this stress crack was loaded enough times until finally reaching the breaking point.  (See id.)  However, he supplies this opinion without applying any testable methods.

> A:     I think during the handling of ladders, many times like this lateral forces can be developed . . . that are not directly related to climbing the ladder.  I think normal handling can develop such forces . . . with repeated use, you can expect crack formation in the vicinity of a stress concentration such as this with repeated use.  Normally, the crack formation will result in propagation which could take place over a very short time interval or a time interval of days or weeks or longer.  (Vance Dep. at 85-86.)

> Q:     Going back to the crack issue, you have not done any calculations or analysis or testing to determine what stress or force would be required to initiate a crack in this end cap?
> A:     True.
> (Id. at 87-88.)

> Q:     And you have made no attempt to determine through handling of the ladder by putting it on and off a truck, transporting the ladder what type of stress would occur at that point?
> A:     That's correct.
> (Id. at 92-93.)

> Q:     So, therefore, you are not able to say whether or not normal use would necessarily cause enough stress to initiate a crack?
> A:     I think over a suitable period of time you would expect cracks like this in many ladders; all of them, I don't know that.
> (Id. at 93.)

16

Q:     But here, since you don't know the material and you have not done
       any testing, you can't say what force would be required to crack one
       of these end caps?

A:     That's right.  All we know is that it happened.

(Id. at 104.)

Q:     Have you done any study or attempted to determine the frequency at
       which [end caps fail on aluminum ladders]?

A:     No . . . I have made no attempt to study that issue.

(Id. at 105.)

This is all that exists on the record regarding Dr. Vance's "methods" for

reaching his conclusions.  If Vance was relying upon his experience in the civil

engineering field to draw his conclusions, he provided no explanation for how that

experience supported his conclusions.  Therefore, defendant's motion to Exclude

the Testimony of Plaintiff's Expert Ollie Vance is due to be granted for the

separate and alternative reason that the testimony is not based on sufficiently

reliable methodology.

          3.     Prejudice

     Even assuming that Vance's testimony met the admissibility requirements

outlined above, the testimony is nevertheless due to be excluded under Federal

Rule of Evidence 403.  Rule 403 provides:

          Although relevant, evidence may be excluded if its probative value is
          substantially outweighed by the danger of unfair prejudice, confusion
          of the issues, or misleading the jury, or by considerations of undue
          delay, waste of time, or needless presentation of cumulative evidence.

17

In <u>Hull v. Merck & Co., Inc.</u>, 758 F.2d 1474, 1477 (11th Cir. 1985) (per curiam), the Eleventh Circuit held that "the assumptions made by [the expert] rendered his seemingly firm opinion quite speculative, and the danger of irrelevance is clear." <u>See</u> <u>also</u> <u>Frazier</u>, 387 F.3d at 1263 (noting that "exclusion under Rule 403 is appropriate if the probative value of otherwise admissible evidence is substantially outweighed by its potential to confuse or mislead the jury.")

Vance's deposition testimony must be excluded under Rule 403 because of the danger of unfair prejudice, confusion of the issues, and misleading the jury that would result from the jury's consideration of an opinion that does nothing to speak to the central issue or any "piece of the puzzle" of the case.[6]  "Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse."  <u>Frazier</u>, 387 F.3d at 1263.

Thus, for all of the separate and foregoing reasons articulated above, Dr. Vance's testimony is inadmissible and defendant's motion to exclude the testimony is due to be granted.

---

[6] <u>See</u> sections IV.(c)(a) and (b), <u>supra</u>.

## IV. Applicable Substantive Law and Analysis

Plaintiff's complaint contains the following claims: (1) liability under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"); (2) failure and refusal to warn; (3) breach of warranties; and (4) failure to retrofit, recall or withdraw.  (See generally Compl.)  Defendant's motion (doc. #20) for summary judgment asserts that plaintiff has failed to establish a *prima facie* case and that there is no genuine issue of material fact as to any of plaintiff's claims against defendant.  The plaintiff concedes that Counts Two and Four should be dismissed. (See Doc. #28 at 4-5.)  Therefore, the Court will dismiss Counts Two and Four and address herein only the merits of Counts One and Three.

### A.      Liability under the AEMLD

To establish liability under the AEMLD, the plaintiff must show that:

(1)     he suffered injury or damages to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if

   (a)      the seller is engaged in the business of selling such a product, and

   (b)     it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2)     Showing these elements, the plaintiff has proven a prima facie case although

> (a)   the seller has exercised all possible care in the preparation and sale of his product, and
>
> (b)   the user or consumer has not bought the product from, or entered into any contractual relation with, the seller.

Casrell v. Altec Industries, Inc., 335 So. 2d 128, 132-33 (Ala. 1976); Atkins v. American Motors Corp., 335 So. 2d 134 (Ala. 1976); see also Nettles v. Electrolux Motor AB, 784 F.2d 1574 (11th Cir. 1986) (applying Alabama law).

As the *prima facie* requirements make clear, the AEMLD is not a theory of strict liability, but instead retains the requirement of fault.  Brownlee v. Louisville Varnish Co., 641 F.2d 397, 400 (5th Cir. 1981) (applying Alabama law).  Thus, the focus of an AEMLD claim is on the fault of the manufacturer in placing a product which is in an unreasonably dangerous condition in the stream of commerce.  The unreasonably dangerous condition can arise from the product's design, manufacture, or from the manufacturer's failure to warn.  See, e.g., Tillman v. Reynolds Tobacco Co., 89 F.Supp. 2d 1297, 1300 (S.D. Ala. 2000), *vacated on other grounds*, Tillman v. R.J. Reynolds Tobacco, 340 F.3d 1277 (11th Cir. 2003).

The AEMLD requires the plaintiff to affirmatively show an unreasonably dangerous defect existed in the product at the time it was manufactured.  Townsend v. General Motors Corp., 642 So. 2d 411, 415 (Ala. 1994).  An "unreasonably dangerous" defective condition under the AEMLD is one that causes a product to

20

fail to meet the reasonable expectations of an ordinary consumer as to its safety. Casrell, 335 So. 2d at 133. "The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." Id., citing Comment I. of § 402 A, Restatement of Torts 2d. Moreover, manufacturers are not liable simply because their products are not as safe as possible. Townsend, 642 So.2d at 415; see also General Motors Corp v. Edwards, 482 So. 2d 1176 (Ala. 1985), *overruled on other grounds*, Schwartz v. Volvo N. America Corp., 554 So. 2d 927 (Ala. 1989) (holding that "failure of a product does not presuppose the existence of a defect"). Moreover, the plaintiff must always show that the alleged defective condition of the product proximately caused his injury. See Taylor v. General Motors Corp., 707 So.2d 198, 202 (Ala. 1997), citing Sears, Roebuck & Co. V. Haven Hills Farm, Inc., 395 So.2d 991 (Ala. 1981).

The AEMLD also requires the plaintiff to show that a safer, practical, alternative design was available to the manufacturer at the time the product was manufactured. See Beech Through Beech v. Outboard Marine Corp., 584 So. 2d 447, 450 (Ala. 1991) citing Edwards 482 So. 2d at 1191. Specifically, the plaintiff must prove that the alleged alternative design is "safer." Id. Whether an

21

alternative is "safer" should be determined while "taking into consideration such factors as the intended use" of the product and whether "the utility of the alternative design outweighs the utility of the design actually used." Id.[7]

Having found the testimony of plaintiff's expert inadmissible, the court recognizes that the AEMLD does not require expert testimony to establish the existence of a defective condition where "under all attendant circumstances . . . the jury could reasonably infer from the product's failure of performance that a defective condition caused the injury." Brooks v. Colonial Chevrolet-Buick, Inc., 579 So. 2d 1328, 1332 (Ala. 1991); Haven Hills, 395 So.2d at 995.[8]

---

[7] The test in its entirety was first expressed by the Alabama Supreme Court in Edwards 482 So. 2d at 1191:

In order to prove defectiveness, the plaintiff must prove that a safer, practical, alternative design was available to the manufacturer at the time it manufactured [the product]. The existence of a safer, practical, alternative design must be proved by showing that:

(a)    The plaintiff's injuries would have been eliminated or in some way reduced by use of the alternative design; and that
(b)    taking into consideration such factors as intended use of the vehicle, its styling, cost, and desirability, its safety aspects, the foreseeability of the particular accident, the likelihood of injury, and the probable seriousness of the injury if that accident occurred, the obviousness of the defect,[]the manufacturer's ability to eliminate the defect, [and whether] the utility of the alternative design outweighed the utility of the design actually used."

[8] The court recognizes that expert testimony is less common to UCC claims, such as a claim for breach of implied warranty of merchantability. See ex parte General Motors, 769 So.2d 903, 912-13 (Ala. 1999). However, the Alabama Supreme Court has carefully distinguished between the evidence required to show a breach of implied warranty claim under Alabama's application of the UCC and the plaintiff's more substantial burden of production set out by the AEMLD. See, e.g., Ex parte General Motors, 769 So.2d at 912-13. And even in some UCC
(continued...)

22

However, the plaintiff has not met this burden.  The only evidence upon which a jury might rest an inference of a defective condition is plaintiff's testimony that the ladder rolled and an end cap was found on the ground after the accident. (See Doc. #28 at 2, 6-7.)  It would not be reasonable for a jury to infer a defect in the ladder from this testimony.  All the testimony establishes is that an accident occurred.  It sheds no light on the cause of the accident, and so, necessarily, whether there was a defect in the ladder.  "A plaintiff must affirmatively come forward with some evidence to support an inference that the product had a defect (that is, a defect was present at the time the product was sold by the defendant and one that is causally related to the plaintiff's injuries)."  Rudd, 127 F. Supp.2d at 1345, citing Taylor, 707 So.2d at 201-02 (the mere fact that a car inexplicably ran off the road is insufficient to establish a defect under the AEMLD because, while the law does not require proof of a specific defect, the plaintiff must prove the existence of a defective condition and proximate cause); Townsend, 642 So.2d at 415 (Ala. 1994) (under the AEMLD, proof of a defect must be affirmatively shown, that is, mere proof of accident and injury is insufficient); Jordan v. Gen. Motors Corp., 581 So.2d 835, 837 (Ala. 1991) (while proof of a specific defect is not

_____

(...continued)
 claims an expert may be required to testify as to the malfunction of a given product.  Id. at 913.

23

required, mere proof of an accident with resulting injuries is insufficient to

establish AEMLD fault because the plaintiff must affirmatively show that the

product was sold with a defect or in a defective condition); Brooks, 579 So.2d at

1332-34 (the plaintiffs did not establish a prima facie case because they offered no

evidence of a defect other than their belief that the car brakes must have been

defective).

Even were this court to allow the plaintiff's AEMLD claim to proceed on the

plaintiff's testimony, the claim would nevertheless fail because he has produced no

evidence of a viable, safer alternative.  (See generally Thompson Dep.)

Therefore, summary judgment is due to be granted in favor of the defendant

as to the AEMLD claim.

### B.    The breach of express warranty claim

In addition to the AEMLD claim, the plaintiff contends that defendant has

breached an express warranty[9] under Alabama Code § 7-2-313 (1975).  (See Doc.

#28 at 10-12.)  The Code sets forth that an express warranty may be created, *inter

alia*, by the seller's "description of the goods which is made part of the basis of the

---

[9] Although the Complaint sets out Count Three as "breach of warranties" and states that "Louisville Ladder . . . expressly or impliedly warranted that the subject twenty foot extension ladder and similar ladders were safe . . ." (see Compl. at ¶ 28), plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment specifically claims only that defendant has breached an express warranty.  (See Doc. # 28 at 10.)

bargain . . . that the goods shall conform to the description." Ala. Code § 7-2-313(1)(b). Here, the plaintiff contends that a label was attached to the ladder attesting to the fact that the load capacity of the ladder is 225 pounds. (See Doc. #28 at 11.) Another label stated that a consumer should select a Louisville Ladder based on the "proper duty rating to support combined weight of user and materials. Ladders are available in duty ratings of 200, 225, 250, and 300 pounds." (Id.) According to the plaintiff, these labels are express warranties under the Alabama Code. (Id.)

Assuming, without deciding, that these labels do in fact constitute express warranties, the plaintiff has nevertheless failed to demonstrate that he is entitled to relief under the theory of express warranty. A plaintiff in an express warranty case must always show that the product failed to perform as expressly warranted, and that the breach of warranty caused the plaintiff's injury. See S-C Indust. v. Am. Hydroponics Sys., Inc., 468 F.2d 852, 855 (5th Cir. 1972) ("We agree with the court below that the specifications created an express warranty that the structure as a unit would withstand a vertical load of 20 pounds per square foot. Since that court found as a fact that the collapse of the structure was a result of its weakening under a load of less than 20 pounds per square foot, we also agree with the court's conclusion that there was a breach of the express warranty"); see also Community

<u>Television Servs., Inc. v. Dresser Indust., Inc.</u>, 586 F.2d 637, 641 (8th Cir. 1978) ("Breach of a warranty created by statements describing the specific capacity of goods is proved when the product is shown by direct or circumstantial evidence to have failed to perform reasonably and safely the function for which it was intended by the manufacturer").

In this case, we do not know what caused the ladder to fall so, necessarily, we do not know whether any product failure actually caused plaintiff's injury. Therefore, summary judgment is due to be granted in favor of the defendant as to the claim for breach of express warranty.

In summary, the court finds that no material issue of fact remains and that defendant Louisville Ladder Group, LLC is entitled to judgment as a matter of law as to all claims asserted by plaintiff.  A separate order will be entered.

**DONE** this the ___12th___ day of September, 2006.


_____
SENIOR UNITED STATES DISTRICT JUDGE

26